# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ALDEN ESTATES OF SHOREWOOD, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 18 C 3826 |
| v. ) | |
| ) | Judge Ronald A. Guzmán |
| ARCH SPECIALTY INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This is an insurance-coverage dispute brought by Alden Estates of Shorewood, Inc. ("Alden") in which it seeks declaratory relief regarding the obligations of Arch Specialty Insurance Company ("Arch") under an insurance policy Arch issued to a third party, Kurtz Ambulance Service, Inc. ("Kurtz"). The issue is whether Alden is entitled to coverage under the "Blanket Additional Protected Persons" provision of that policy. The parties move for summary judgment under Federal Rule of Civil Procedure 56. For the reasons explained below, Alden's motion for summary judgment is denied and Arch's motion for summary judgment is granted.

## MATERIAL FACTS

The material facts are undisputed. Alden operates a nursing home in Shorewood, Illinois. On October 13, 2011, Alden entered into a contract with Kurtz titled "Kurtz Ambulance Service, Inc. Agreement" (the "Kurtz-Alden Agreement"), pursuant to which Kurtz agreed to provide medical transportation services for Alden's patients. (ECF No. 19-7, Ex. E to Def.'s SMF.) Under the Kurtz-Alden Agreement, Kurtz was required to, among other things, "produce and maintain in effect" during the contract term "general and professional liability insurance covering services rendered pursuant to this Agreement." (*Id.* at 3.) The Kurtz-Alden Agreement

further provided that Kurtz agreed to "cause Alden . . . to be covered as additional insured as [sic] respect to liability arising out of activities of the insured under the applicable liability insurance with respect to the transport vehicle(s) supplied by [Kurtz]." (*Id.* at 4.) The Kurtz-Alden Agreement was a one-year contract that automatically renewed for successive one-year periods unless sooner terminated. (*Id.* at 2.)

Kurtz obtained a healthcare professional liability policy (the "Policy") from Arch for the relevant time period, with limits of $1,000,000.00 for each occurrence and $3,000,000.00 in the aggregate. (ECF No. 23-1, Pl.'s Resp. Def.'s SMF ¶ 5.) Specific relevant provisions of the Policy are set out below in the Court's discussion of the parties' motions.

On April 6, 2016, Patricia D. Sistek, the Independent Administrator of the Estate of Patricia L. Terry, filed a wrongful-death and survival action (the "Underlying Action") in the Circuit Court of Will County, Illinois. In pertinent part, the alleged facts of the Underlying Action are as follows. Patricia L. Terry was a resident at Alden. On October 31, 2015, Alden requested Kurtz to transport Mrs. Terry from Alden to her appointment for dialysis treatment at DaVita Renal Center ("DaVita") in West Joliet. Kurtz employees picked up Mrs. Terry at 2:10 p.m. and dropped her off at DaVita for treatment at 2:55 p.m. At approximately 7:00 p.m., when Mrs. Terry's treatment was complete, DaVita employees escorted her to a waiting room. DaVita employees subsequently closed the facility for the day and left Mrs. Terry in the waiting room, locked in the building. Later that evening, Alden discovered that Mrs. Terry was not back at the nursing home. Sistek subsequently found her mother locked in the DaVita building. The police were called, and the building was unlocked at 11:45 p.m. Mrs. Terry was transported to Presence St. Joseph Medical Center, where she was pronounced dead at some point after midnight.

Kurtz and Alden, along with DaVita-affiliated entities and agents, are defendants in the Underlying Action. With respect to Alden, Sistek asserts wrongful-death and survival claims, as well as a claim for violation of the Illinois Nursing Home Care Act, 210 ILCS 45/1-101. On March 24, 2017, Alden sent a letter to Kurtz's counsel requesting that Kurtz provide a defense and indemnification in the Underlying Action, pursuant to the Policy. In a letter dated November 7, 2017, Arch denied Alden's request. When Alden asked Arch to reconsider its decision, Arch reaffirmed its denial of coverage.

Alden subsequently filed the instant action against Arch in the Circuit Court of Will County. Arch, asserting diversity jurisdiction, removed the suit to this court. In its complaint, Alden seeks a declaratory judgment that it qualifies as an insured under the terms of the Policy; that the allegations of the Underlying Action fall within the Policy's scope of coverage; that Arch owes Alden a duty to defend and indemnify it with respect to the Underlying Action; and that Arch must reimburse Alden for its costs of defense and attorneys' fees incurred in defending the Underlying Action. (ECF No. 2-1, Compl.) The parties cross-move for summary judgment.

## DISCUSSION

The parties do not call the Court's attention to any choice-of-law provision of the Policy, and they both rely on Illinois law. Therefore, the Court will apply the substantive law of Illinois. *See Harter v. Iowa Grain Co.*, 220 F.3d 544, 559 n.13 (7th Cir. 2000) (a court will not perform an independent choice-of-law analysis where the parties agree on the governing law and the choice bears a reasonable relation to their dispute).

"Under Illinois law, 'the construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment.'" *Hurst-Rosche Eng'rs, Inc. v.*

3

*Commercial Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995) (brackets omitted) (quoting *Crum & Forster Managers Corp. v. Resolution Tr. Corp.*, 620 N.E.2d 1073, 1077 (Ill. 1993)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' only if a reasonable jury could find for either party." *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 599 (7th Cir. 2014) (citation and internal quotation marks omitted). On cross-motions for summary judgment, the Court construes all inferences in favor of the party against whom the motion under consideration is made. *Westfield Ins. Co. v. Nat'l Decorating Serv., Inc.*, 863 F.3d 690, 695 (7th Cir. 2017).

An insurer has an obligation under Illinois law to defend its insured in an underlying lawsuit if the allegations of the underlying lawsuit are potentially within the coverage of the insurance policy, even if the allegations are groundless, false or fraudulent. *BASF AG v. Great Am. Assurance Co.*, 522 F.3d 813, 819 (7th Cir. 2008). "[A]n insurer may justifiably refuse to defend only where it is apparent from such a comparison that the allegations fail to state *any* claim within, or potentially within, the scope of policy coverage." *Int'l Minerals & Chem. Corp. v. Liberty Mut. Ins. Co.*, 522 N.E.2d 758, 762 (Ill. App. Ct. 1988). "'The insurer's duty to defend its insured arises from the undertaking to defend as stated in the contract of insurance.'" *James River Ins. Co. v. Keyes2Safety, Inc.*, No. 11 C 901, 2012 WL 3023334, at *2 (N.D. Ill. July 24, 2012) (quoting *Zurich Ins. Co. v. Raymark Indus.*, 514 N.E.2d 150, 161 (Ill. 1987)). Thus, "[t]he extent of an insurer's duty to defend is determined by the language in the contract/policy." *Lifschultz Fast Freight, Inc. v. Transcon. Freight Sys., Inc.*, No. 91 C 688, 1993 WL 787511, at *4 (N.D. Ill. Aug. 24, 1993). When the terms of the policy are clear, the court must construe them according to their plain and ordinary meaning, but if any policy

4

language is ambiguous, it must be interpreted against the insurer. *Valley Forge Ins. Co. v. Swiderski Elecs., Inc.*, 860 N.E.2d 307, 314 (Ill. 2006). Generally, the insured bears the burden of proving that its claim falls within the policy's grant of coverage, and the insurer bears the burden of proving that a limitation or exclusion applies. *Addison Ins. Co. v. Fay*, 905 N.E.2d 747, 752 (Ill. 2009).

The Policy states that the words "we," "us," and "our" refer to Arch, and the words "you" and "your" refer to Kurtz. (ECF No. 19-6, Ex. D to Def.'s SMF, Policy at 2.)[1] The "Insuring Agreement" subsection of the "Healthcare Professional Liability Coverage Form" of the Policy provides as follows:

> We will pay those amounts that the insured becomes legally required to pay as damages because of "medical professional injury" that results from acts or omissions in the providing of or failure to provide "health care professional services" by or for an insured.

(*Id.* at 26.)[2] The word "insured" is defined as "any person or organization qualifying as such under **Section II - Who Is An Insured**." (*Id.*) It is undisputed that Kurtz is an insured. The Policy also has a "Coverage Change Endorsement" that modifies the Healthcare Professional Liability Coverage Form. (*Id*. at 14.) In pertinent part, the Coverage Change Endorsement adds the following provision to the **"Who Is An Insured"** section of the Policy:

> **Blanket Additional Protected Persons.** Other individuals or organizations when required to be covered by written contract, agreement, or permit, provided the written contract, agreement or permit is executed prior to the "claim" being made

---

[1] For ease of reference, citations to page numbers of the Policy are drawn from the CM/ECF header placed at the top of filings.

[2] The terms that appear in quotation marks are defined in the Policy, but the definitions are not material for purposes of deciding the present motions. Furthermore, the parties do not discuss the Insuring Agreements that are contained in other sections of the Policy (the "Healthcare General Liability Coverage Form" or the "Healthcare Umbrella Coverage Form").

5

or the "suit" being brought. Coverage is provided for them only for the work you performed or should have performed on their behalf. They will share in your limit of liability for any covered "claim" or "suit." Damages paid on their behalf will reduce and may exhaust your limit of liability under this policy.

(*Id.*)

Thus, the Policy provides coverage for other organizations, such as Alden, when those organizations are required to be covered under a previous written contract or agreement and only for the work Kurtz "performed or should have performed" on the organization's behalf. The parties dispute whether Alden is entitled to coverage for the Underlying Action under this provision.

Arch contends that the claims asserted against Alden in the Underlying Action fall outside the scope of the Blanket Additional Protected Persons provision because they are unrelated to the performance of Kurtz's duties under the Kurtz-Alden Agreement. (ECF No. 19-1, Def.'s Mem. Supp. Mot. at 11.) Alden argues that it is entitled to coverage because the complaint in the Underlying Action "charges Alden with fault as a direct result of [Kurtz's] failure to pick up Mrs. Terry from her dialysis treatment." (ECF No. 23, Pl.'s Mem. Supp. Mot. at 10.) Neither party cites any decision applying Illinois law that considers language identical or similar to that of the Blanket Additional Protected Persons provision, but neither party asserts that the provision or any part of it is ambiguous.

The Court agrees with Arch. In the Underlying Action, Sistek alleges in each of her three claims against Alden that Alden was negligent in two ways: (1) it failed to follow up on Mrs. Terry's whereabouts when it knew that Mrs. Terry was taken from its facility three times a week to dialysis and brought back around 7:00 p.m.; and (2) it "[a]bandoned" Mrs. Terry by not questioning her failure to return to its facility. (ECF No. 5-1, 3d Am. Compl. at 23-30.) Sistek's

complaint contains separate claims against Kurtz, and the claims against Alden are not premised on Kurtz's alleged omissions or the relationship between Alden and Kurtz. Under the plain language of the Blanket Additional Protected Persons provision, coverage is provided for Alden only for the work Kurtz performed or should have performed on Alden's behalf. Alden, who has the burden of demonstrating that it falls within the provision's grant of coverage, has not submitted any evidence that it was Kurtz's responsibility to take the actions Sistek alleges that Alden should have taken: follow up on the whereabouts of a nursing-home resident and/or investigate the fact that she had not returned to the nursing home. To the contrary, the evidence is that while Kurtz had several responsibilities under its agreement with Alden, which largely entailed providing transportation services with medically-appropriate vehicles, those contractual responsibilities did not include tracking patients' whereabouts or arranging transportation. (Kurtz-Alden Agreement at 1-2.)

The Court is unpersuaded by Alden's contention that Alden's alleged negligence is "directly based on Kurtz's failure to pick up Mrs. Terry." (ECF No. 27, Pl.'s Reply at 2.) Alden mischaracterizes the nature of the claims Sistek asserts against it. Alden's alleged omission may have occurred at a point in time after that of Kurtz, but it is simply not the case that Sistek's claims against Alden are premised on an omission by Kurtz. The claims against Alden are premised on Alden's independent alleged omissions, not on the work Kurtz performed or should have performed *on Alden's behalf*. In other words, Alden's alleged negligence is wholly independent of Kurtz's activities.

Alden fails to show that its claim falls within the Policy's grant of coverage. Summary judgment in favor of Arch and against Alden is therefore appropriate.

## CONCLUSION

Defendant's motion for summary judgment [19] is granted. Plaintiff's motion for summary judgment [24] is denied. Summary judgment is entered in favor of defendant, Arch Specialty Insurance Company, and against plaintiff, Alden Estates of Shorewood, Inc. Civil case terminated.

**DATE**: November 6, 2018

_____
**Ronald A. Guzmán
United States District Judge**